UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

RAILROAD CONSTRUCTION CO. OF
SOUTH JERSEY, INC.,
:     Hon. Joseph H. Rodriguez

       Plaintiff,        :     Civil Action No. 08-377

       v.        :     **OPINION**

JP RAIL, INC, d/b/a SOUTHERN     :
RAILROAD COMPANY OF NEW JERSEY,     :

       Defendants.

These matters come before the Court on Plaintiff Railroad Construction Company of South Jersey, Inc.'s ("RCC") Motion for Summary Judgment Motion [138] and Defendant JP Rail, d/b/a Southern Railroad Company of New Jersey's ("JP Rail" or "JP") Motion for Partial Summary Judgment [146]. JP Rail argues for summary judgment on the theory that some of RCC's claims are barred by the statute of limitations. RCC moves for summary judgment as to all claims against JP Rail.

This case arises out of a business relationship between the parties which lasted over twelve years. The case has been slow to move forward because of significant delays in the discovery process due to poor record keeping, the death of Defendant's president, and requests by the parties for extensions of time. The genesis of the present motion finds its origin during a second or third attempt at a Final Pretrial Conference during which Plaintiff moved for permission to amend the complaint to reflect new a damages calculation.1 On January 31, 2013, the Court heard oral argument on Plaintiff's late

---

1 On May 18, 2012, the Final Pre-Trial Conference was adjourned. The conference was

1

stage motion to amend the Complaint to include new invoices. The proposed amendment increases the amount of damages for two reasons. First, the amendment includes the addition of new invoices not previously identified in the original Complaint.2  Second, the amendment corrects some of the figures listed in previously identified invoices and eliminates certain invoices altogether because, it turns out, the original Complaint erroneously lists these invoices as unpaid. Following oral argument, the Court permitted the amendment, extended the parties an opportunity to take discovery on the new invoices, and permitted the parties to file dispositive motions. JP Rail elected to forgo additional discovery and now moves for summary judgment as to nine invoices that were not listed in the Original Complaint on the theory that these invoices are time-barred and do not relate back to the date of the filing of the original complaint under Rule 15 (c)(1). RCC claims summary judgment is warranted because JP Rail has not produced anyone to refute its claim that the invoices listed in Joint Exhibit 21A are unpaid.

The Court held oral argument on the summary judgment motions on November 13, 2013. For the reasons that follow, as well as those expressed on the record during the hearing, Defendant's motion is granted and Plaintiff's motion is granted.

---

conducted on June 18, 2012 , but the Final Pretrial Order was not finalized. During the Summer of 2012, several telephone status conferences were conducted by Magistrate Judge Williams. A second attempt at a Final Pretrial conference was made on October 16, 2012, but was adjourned to November 14, 2012. Again, this conference did not produce a finalized Order because Plaintiff moved to amend the Complaint. The formal motion to amend was made on December 3, 2012. The Court permitted the amendment, granted leave to file dispositive motions, and held oral argument on the pending summary judgment motions.

2 RCC filed its Complaint on January 18, 2008 seeking damages of $915,379.34 on account of outstanding invoices. JP Rail filed an Answer and Counterclaim on August 15, 2008. RCC amended its Complaint on August 15, 2008, claiming damages in an amount of $1,013,673.51. JP Rail withdrew its Counterclaim on August 23, 2010. Although this is technically the second time the Complaint has been amended, the Court will refer to the present amended complaint as the "Amended Complaint."

## I. Background

A more complete recitation of the factual underpinnings of this case can be found in the Court's Opinion of March 19, 2012. RCC and JP Rail had a business relationship that spanned 12 years. RCC brings this cause of action with respect to specified invoices from a period of 1998 to 2006, attached to Plaintiff's original Complaint as "Exhibit A" (the "Exhibit A invoices"). RCC initially claimed that the disputed invoices totaled $1,013,673.51, excluding accrued interest in the amount of $1,620,360.91. (Aff. of James Daloisio ¶ 29, Jul. 21, 2011.) These invoices reflect track work, repairs and construction related services which RCC performed on the Salem and Pleasantville Lines, including repair work completed following Hurricane Floyd and a construction project for replacement of the Oldman's Creek Bridge trestle in Salem County. RCC did not complete the Oldman's Creek Bridge replacement. Rather, RCC alleges that JP Rail contracted with RCC to complete the job and engaged RCC's performance of preparatory engineering and work on the project before the job was ultimately awarded to another contractor. (Id. at ¶¶ 59-60). According to JP Rail, while JP had contracted with RCC to perform repair work on the bridge, the replacement project was subsequently taken over by Salem County, which requested bids and hired a different contractor without input from JP Rail. (Aff. of Thomas Collard ¶ 10, Sept. 14, 2010.)

During the course of the relationship between the parties, JP Rail encountered cash flow problems which led to delayed payment of RCC invoices. RCC continued to provide construction services despite outstanding invoices based on representations by Mr. Petaccio, President of JP Rail, that the invoices would be paid once funding permitted. (Supp. Aff. of James Daloisio ¶ 26, August 18, 2011.) Most of the work RCC

completed for JP Rail was paid for in partial payments sent by JP Rail. (Dep. of James J. Daloisio 88:19-25, 89:1-4, March 16, 2010.) JP Rail often sent checks without a designation as to which invoice the payment applied. In such cases, RCC's practice was to apply the checks against the oldest outstanding invoices. (Id. at 135:7-22.)

RCC sent numerous letters and requests regarding unpaid invoices, including letters specifying invoices in February and March of 2005. (Daloisio Supp. Aff. ¶ 32; Ex. E-I.) RCC subsequently sent additional letters to JP Rail in 2007 to which JP either did not respond or responded denying that invoices were not paid. JP Rail asserted on numerous occasions that it did not have the invoices in question and requesting that RCC send documentation. (Def.'s Br. [66] Ex. P; Grueneberg Cert. Ex. J.) RCC maintains that this information had been provided to JP Rail in a March 9, 2007 letter, to which JP Rail did not respond. (Daloisio Supp. Aff. ¶ 36.) In correspondence between attorneys for the parties beginning in May of 2007, RCC indicated its intention to file a lawsuit and JP Rail either denied knowledge of outstanding invoices or failed to respond. (Grueneberg Cert. Ex. I-K.) On December 1, 2007, RCC sent JP Rail a letter signed by Mr. Daloisio stating that an audit of RCC's accounts showed a current amount due by JP Rail of $60,978.40.

Plaintiff filed its Complaint on January 18, 2008, alleging breach of contract and related claims. During the course of discovery, JP Rail produced approximately seventy checks, most of which did not indicate an invoice number and did not match specific amounts billed on given invoices. As a result of the unwieldy nature of the exhibits, the parties participated in meetings with Judge Williams to streamline the exhibits.   On August 2, 2012, Judge Williams held a status conference on the record.   The transcript

of that proceeding indicates the tortured nature of the discovery process in this case. See Tr. Magistrate Williams Hearing, [Dkt. No. 83]

      The crux of the arguments center on Joint Exhibit 21A, which is a document created jointly by the parties that attempts to set out each invoice RCC claims JP Rail failed to pay. Joint Exhibit 21A identifies 379 RCC invoices and the 260 Payments made by JP Rail. Both counsel have reviewed the Exhibit and made revisions. The amended complaint changes the Exhibit in the following manner. First, it deletes four of the invoices identified in the original Complaint because it was determined by RCC's Vice President James Daloisio that these invoices have been paid by application of payment tendered by JP Rail- CI-7045 ($23,955.00), CI-7233 ($13,000.00), CI-7280 ($330.00), and CI-7309 ($510.00). Second, the Amended Complaint increases the amount of six invoices identified in the original Complaint because these amounts were understated by a total of $225, 803.20. RCC claims that the understatement was the result of a transcription/administrative error. Third, nine additional invoices are added in the Amended Complaint with a total sum of $876,175.00. These invoices, RCC claims, were never paid and remain outstanding.

      RCC claims that it was impossible to amend the complaint sooner, because it did not receive some of the documents until July 2011 and because the review of the documents, against the voluminous documents it already had in its possession, simply took time. RCC further highlights that Joseph Petaccio, the longtime President of JP Rail became very ill during the pendency of this litigation and has since died. This, coupled with Plaintiff's counsel's repeated requests for time for personal reasons, caused a protracted delay in the prosecution of this case. RCC further claims that Mr.

Petaccio's illness and death frustrated his efforts to compel compliance with the Court's discovery Orders.

In short, JP Rail claims that the statute of limitations has expired as to the nine additional invoices. JP Rail further claims that because these invoices do not relate back under Fed. R. Civ. P. 15 (c), summary judgment is warranted. The issue is whether these invoices arise from the same transaction or occurrence as the claims in the Original Complaint or whether they are separate causes of action in their own right.

JP Rail argues that the undue delay in amending the Complaint lies with RCC alone and that the nine additional invoices do not relate back. In this regard, it appears that JP Rail does not object to the other modifications of Joint Exhibit 21A, including the elimination of certain invoices and correction of other invoices, made in the Amended Complaint.

## II. Standards of Review

### A. Summary Judgment Standard

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . .' " Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

7

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.   Anderson, 477 U.S. at 249.   Credibility determinations are the province of the finder of fact.   Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. Federal Rule of Civil Procedure 15 (c) Relation Back

Under Fed. R. Civ. P. 15(a), leave to amend pleadings shall be "freely give[n]" when "justice so requires." In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court articulated the policy of "freely" granting leave to amend as follows:   If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."   Foman, 371 U.S. at 182; see also Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).   A "trial court's discretion under Rule 15, however, must be tempered by considerations of prejudice to the non-moving party, for undue prejudice is 'the touchstone for the denial of leave to amend.' . . .   In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously

8

allowed or futility of amendment." Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981) (citing Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978)); see also Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

Here, JP Rail argues that RCC cannot meet Rule 15 (c)(1), which permits the addition of claims otherwise time-barred by the applicable statute of limitations. In this case, the dates of the nine added invoices are beyond the statute of limitations unless the Court determines that the proposed amendment "relates back" to the date of the filing of the Original Complaint. See Fed. R. Civ. P. 15 (c). Rule 15(c) governs the "Relation Back of Amendments" and provides, in relevant part, that:

> (1) An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading . . .

Simply put, if the nine invoices relate back to the date of the filing of the Original Complaint, they are timely under the statute of limitations for contract actions in New Jersey under N.J.S.A. 2A:14-1, which provides in relevant part:

Every action at law. . . for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

N.J.S.A. 2A:14-1. The Court finds that the claims in the Amended Complaint do not relate back and are therefore time barred. JP Rail's Motion for Partial Summary Judgment is granted. In addition, the Court finds that there are no genuine issues of

9

material fact precluding summary judgment in favor of Plaintiff; Defendant has not put forth any evidence to rebut Plaintiff's showing that the invoices were paid.

### III. Analysis

**A. JP Rail's Motion for Partial Summary Judgment**

JP Rail contends that because the both the filing of the Motion to Amend and the Amended Complaint were filed in 2012 and 2013, all claims arising from the nine invoices are barred by the 6 year statute of limitations. The Court agrees. The Court's March 19, 2012 Opinion [Dkt. No. 103] addressed these concerns:

> The very purpose of statutes of limitations is to encourage the "rapid resolution of disputes, repose for defendants, and avoidance of litigation involving lost or distorted evidence." Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 522 (3d Cir. 2007). Surely this case, with its prolonged procedural history, poor record of record-keeping, and less than diligent discovery, illustrates the paramount importance of the last of these concerns. Defendant's motion for partial summary judgment as to Plaintiff's claims arising out of invoices dated prior to January 8, 2002 will be granted.

The Court finds that the nine additional invoices do not relate back to the date of the original Complaint because the invoices represent separate transactions and/or occurrences that do not derive from the same nucleus of operative facts as those specifically detailed in the Original Complaint. See Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004).

The relation back provision of Fed. R. Civ. P. 15 "balance[s] the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." Krupski v. Costa Crociere S.P.A., 560 U.S. 538, 540, 130 S.Ct.

10

2485, 2494 (2010). Here, the Court is not persuaded that the Defendant was put on notice of the claims set forth in the Amended Complaint by virtue of the pleadings in the Original Complaint or that the Original Complaint "sufficiently embraces the amended claims." Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1014–15 (3d Cir. 1995).

 First, "[t]hough not expressly stated, it is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." Glover v. F.D.I.C., 698 F.3d 136, 145-46 (3d Cir. 2012) (quoting Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n. 3, 104 S. Ct. 17239 (1984) (internal quotation and citation omitted). Relation back, therefore is permitted where the opposing party is given "fair notice of the general fact situation and the legal theory upon which the amending party proceeds." Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004). A court should exercise caution when considering amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims[.]" United States v. Hicks, 283 F.3d 380, 388 (D.C.Cir. 2002).

 Here the Original Complaint was pled in a manner that did not identify a possible "other" universe of other outstanding invoices. Plaintiff attached Exhibit A, which set forth in great detail the title of each project in which payment was not made, the specific invoice number, and the outstanding balance. Since the inception of this case, the parties have been working toward streamlining the evidence and in the six years that effort has been ongoing, Plaintiff has never indicated that additional invoices may exist. Even though Defendant may have known that the general allegation is that invoices are

11

unpaid, it has operated in the course of this litigation under the impression that its exposure was that set forth in Exhibit A.  Thus, the addition of the nine invoices is a game changer and the Court concludes that Defendant was not given fair notice of the claims. See Hicks, 283 F.3d at 388; see also Meijer, Inc. v. Biovail Corp., 533 F.3d 857, 866 (D.C.Cir. 2008) (Under Rule 15, a court considers "whether the original complaint adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint."

Moreover, although there is a demonstrable business relationship between the parties, the invoices were generated out of specific engagements for services for a particular job. See Daloisio Dep., 172: 18-25; 173:1.  According to Daloisio, separate invoices were generated for each specific job.  Thus, each invoice relates to a job, in itself unconnected to other tasks performed for JP Rail by RCC. See March 19, 2012 Opinion [Dkt. No. 103].  The manner in which each invoice was generated, as being connected to one specific task, counsels against a conclusion that the amended complaint meets Rule 15(c)(1)(B)'s requirement of "a common core of operative facts in the two pleadings." Bensel, 387 F.3d at 310. The Court in Bensel applied relation back of an amendment that "restate[d] the original claim with greater particularity or amplif[ied] the factual circumstances surrounding the pertinent conduct." 387 F.3d at 310.  Significantly, Bensel original complaint alleged broad claims of breach of a duty of fair representation which the court concluded put the defendant on notice of the "more particularized claims" set forth in the amended complaint. Id. As a result, the Court concluded that the defendant was "unquestionably on notice that it would be held liable for every possible breach of its fair representation duty occasioned by the outlined facts." Id.

Bensel does not compel relation back in the case at bar because the original claims in Exhibit A are pled with particularity so as to limit the scope of the litigation. As a result the amendment here does not "restate the original claim with greater particularity." Id. Instead, it simply adds claims which could have been brought in the first instance but are now time barred. Plaintiff's argument that the invoices arose out of the same conduct, transaction, or occurrence because RCC was the sole vendor for JP Rail for twelve years does not demonstrate that separate invoices are connected to the same transaction. Because no contractual relationship exists designating RCC as the sole provider of services for JP Rail and each project was billed individually, relation back is inappropriate. To conclude otherwise would offend the purpose of the statute of limitations as there would never be an impetus to plead every claim; a plaintiff could purposefully withhold claims to bring at a later time through Federal Rule of Civil Procedure 15(c).3  Thus, "the purpose of the statute of limitations has not been satisfied" and Plaintiff's new claims are "not an original pleading that [can] be rehabilitated by invoking Rule 15(c)." Glover, 698 F.3d at 146 (citing Baldwin, 466 U.S. at 149 n. 3, 104 S. Ct. 1723 (internal marks and citation omitted); see 6A Wright et al., Federal Practice & Procedure § 1497 ("Although not expressly mentioned in the rule, ... courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading. Only if the pleading has performed

---

3 Although a different area of the law, in the shipping context, separate bills of lading for cargo carried on the same ship to the same port do not constitute the same transaction or occurrence under Rule 15 (c). See Ferrostaal, Inc. v. M/V Yvonne, 10 F.Supp.2d 610, 613 (E.D. La. 1998) (claim for damage to cargo carried under the New Orleans bills of lading did not relate back to the filing of the claim under the Houston bills of lading only even though the New Orleans cargo and the Houston cargo traveled on the same ship.); Shipping Corp. of India v. Pan American Seafood, Inc., 583 F. Supp. 1555 (S.D.N.Y. 1984) (shipper could assert claim only if damage arose out of the very same transaction upon which original claim was made).

that function ... will the amendment be allowed to relate back....").

The Court finds that Plaintiff's original Complaint did not adequately notify the Defendants of the claims set forth in the amended complaint which serve to increase the claimed damages by the amount of $ 876, 175.00.   While the general claims are for breach of contract for failure to remit payment, the specificity of the claims coupled with the extensive discovery efforts which focused on and scrutinized specific invoices left Defendants without notice of the additional claims.   Had Defendants known that the litigation would encompass additional claims with significant damages, the course of this protracted litigation may have been different.   Therefore, relation back is not appropriate and Plaintiff's nine new claims set forth in the Amended Complaint are time barred. Defendant's motion for partial summary judgment is granted.

### B. Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment is granted.   JP Rail has failed to demonstrate that it made payment as to any of the open invoices identified in Exhibit 21A.   Instead, JP Rail argues solely that Plaintiff's accounting practices are questionable and unworthy of credence.   Despite the allocation of time to conduct additional discovery in support of its case, Defendant elected to forgo depositions, hire an expert, or even identify a person who will testify on its behalf as to the accounting practices it claims are incredible.   Simply put, Defendant has not offered by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex Corp., 477 U.S. at 323. Although Defendant challenges the accounting practices of Plaintiff, and attempts to show discrepancies in the record, it fails to put forth "affirmative evidence that contradict those offered by the moving party."   Andersen, 477 U.S. at 256-57.

14

Defendant argues the Final Application of Payments to Invoices by Year shows that some of the invoices were paid from a combined total of checks; RCC lists invoice CI-6541 dated December 22, 1999 in the amount of $1,582.00. See Pl. Ex. E, at 3. RCC contends that this invoice was paid from a combined total of three checks, two of which were paid to it in February and March of 1999, a few months before the invoice was created (Check 1710 dated February 23, 1999 and Check 1861 on March 5, 1999). Def. Br., p.9. In addition, Defendant contends that there are several instances where RCC credits payments months or even years before it generated the invoice. For example, Invoice CI-6579, dated December 1, 1999 is shown to have been paid with Check 1710 on June 8, 1998. See Final Application of Payments to Invoices by Year, Pl. Ex. E.   Another example shows that Invoice CI-7045 dated January 31, 2002 was allegedly satisfied in part by Check 1327 dated May 12, 1999 in the amount of $6,068.01 and Check 1246 dated June 2, 1999 in the amount of $710.59. Defendant argues that because RCC claims that payments remitted without reference to specific invoices would be applied to the oldest invoice, checks received in 1999 cannot be properly credited to an invoice generated two and a half years later.

Moreover, during his deposition, James Daloisio, testifies that the accounting practices as to JP Rail differed from RCC's standard practices.

> **Q.** Your interrogatory answer, as Counsel just read, references that this audit letter only reflects current amounts due you. What's your definition of current?
> **A.** In this case it was the Fire Road project.
> **Q.** Okay. Well, what's your definition of current, generally speaking, for purposes of your business?
> **A.** We did not deal with the Southern in the same way we dealt with most of our customers. Most of our customers, when a bill is prepared, it would go into our system, because

15

> we expect to be paid within 30 to 60 days on the invoices.
> With Southern, we did not have that expectation.
> **Q.** So, the only thing you considered current as of October 31st, 2007 was a bill from May of 2006?
> **A.** That was outstanding money which was owed on a State funded project. So, we felt that it would come in eventually.
> **Q.** Were any of the other outstanding balances on State funded projects?
> **A.** Yes, they were.
> **Q.** Why were they not listed as current?
> **A.** Because they were long overdue.

Def. Br. Opp. Ex. 7, Daloisio Dep.at 198.

Defendant argues that the accounting and apportionment practices of Plaintiff are subject to a credibility determination of Daloisio's testimony. The Court finds that JP Rail's attempt to create a credibility issue fails because a review of the Final Application of Payments to Invoices by Year demonstrates that RCC applied random checks to older invoices in an attempt to satisfy that outstanding obligation. See Final Application of Payments to Invoices by Year, Ex. E. RCC has set forth evidence of its accounting practices as to JP Rail and, despite several admonitions by the Court during the January 31, 2013 hearing to identify someone who will testify on behalf of Defendant to rebut the evidence, Defendant has not presented any evidence to challenge the schedules prepared by RCC. See Tr. January 31, 2013, Dkt. No. 140; see also Tr. August 8, 2011, Dkt. No. 83(Hearing before Magistrate Judge Williams questioning the Defendant's proofs in this case.). As such, there is no evidence in the record to rebut the fact that the invoices identified in Exhibit 21A, sans the nine additional invoices, are unpaid. Defendant has been given every opportunity to bolster its case through deposition, additional discovery, and leave. It has not done so and cannot not now, at this stage in the litigation, create a

16

genuine issue of material fact predicated upon bald statements and unsupported conjecture.  As a result, summary judgment in favor of Plaintiff is granted.

### C. Plaintiff's Request for Pre-Judgment Interest

Plaintiff argues that it is entitled to pre-judgment interest.  "[T]he law of the forum state—in this case, New Jersey—applies to questions of process, of which the award of interest is one" in breach of contract cases.  Gleason v. Norwest Mortg., Inc., 253 Fed.Appx. 198, 203–04 (3d Cir. 2007).  The decision to award prejudgment interest in New Jersey, is left to the sound discretion of the Court. Id. at 204 (citing County of Essex v. First Union National Bank, 186 N.J. 46, 891 A.2d 600, 608 (2006)).

Here, Plaintiff submits a calculation it believes encompasses its pre-judgment interest award.  Plaintiff asks for a hearing regarding on the issue and the Court grants the request.

### IV. Conclusion

For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is granted. The Court will schedule a hearing on Plaintiff's request for pre-judgment interest.

Dated: March 31, 2014

                                           s/ Joseph H. Rodriguez
                                           Hon. Joseph H. Rodriguez,
                                           UNITED STATES DISTRICT JUDGE